IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANDRE L. HEATLEY,**
        **Petitioner,**

**v.**                                            **Civil Action No. 5:08cv125**
                                                      **(Judge Stamp)**

**WARDEN JOE DRIVER,**
        **Respondent.**

## REPORT AND RECOMMENDATION

On August 1, 2008, the *pro se* petitioner, Andre L. Heatley, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is an inmate at USP Hazelton, which is located in Bruceton Mills, West Virginia. In the petition, the petitioner challenges both the computation of his sentence by the Bureau of Prisons ("BOP") and a decision of the U.S. Parole Commission. The undersigned conducted a preliminary review on August 21, 2008, and determined that summary dismissal was not appropriate at that time. Accordingly, a show cause order was entered. On October 22, 2008, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On October 23, 2008, a Roseboro Notice was issued and on December 9, 2008 the petitioner filed a response which included a Motion for Summary Judgment. This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, et seq., is ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner was convicted of Murder II While Armed in violation of D.C. Code § 22-2204 and Possession of a Firearm During a Crime of Violence or Dangerous Offense in violation of D.C. Code § 22-3204(b). On November 13, 1996, the Superior Court of the District of Columbia

sentenced him to 15 years to life for murder while armed, and a concurrent 5 to 15-year term for possession of a firearm during a crime of violence or dangerous offense. The petitioner has been in federal custody since August 7, 2000, pursuant to the District of Columbia Revitalization Act of 1997.

Because the petitioner's offenses occurred on April 20, 1994, he was sentenced pursuant to the provision of the D..C. Good Time Credit Act of 1986, which applies to offenses committed on or after April 11, 1987, until June 21, 1994.(Doc. 12-2, p. 2). Pursuant to this Act, a prisoner may earn institutional and educational good time credits off both his minimum and maximum term of imprisonment. However, only the non-mandatory minimum portion of the sentence may receive good time credit deductions. (Doc. 12-3, p. 13). Furthermore, "[i]nstitutional and educational good time credits may not be applied to the minimum terms of persons sentenced under...§ 22-3204(b). (Doc. 12-3, p. 14). The petitioner was sentenced to a 5 to 15 year term for his violation of D.C. Code § 22-3204(b). Therefore, the first 5 years of the petitioner's 15-year minimum term are not eligible for any good time deductions.

In computing the petitioner's sentence, the BOP awarded him jail credit in the amount of 761 days for all time spent in custody from the date of his arrest on October 14, 1996, through November 12, 1996, the day before his sentenced was actually imposed. (Doc. 12-3, p. 8). The petitioner also received twelve hundred (1200) days of good conduct time credit towards his minimum term which exceeded his mandatory minimum. (Id.). Applying a total of 1961 days credit, the petitioner's initial parole eligibility date was determined to be June 30, 2006. (Id.).

On February 1, 2008, a hearing examiner from the United States Parole Commission ("USPC") conducted an initial parole hearing. The hearing examiner noted in the summary that

petitioner

> has maintained an excellent adjustment throughout his
> incarceration and has participated in educational,
> vocational and counseling programs. He has programmed
> to the extent that this examiner determined that he should be
> awarded an SPA reduction of 12 months for his superior
> programming above and beyond the normal GED level.
> The subject accepts full responsibility for his actions. He
> admits he was under the influence of drugs and alcohol at the
> time of the offense. The subject claims he was trying to break up
> a fight and thinking the subject was going to shoot him, he pulled
> the gun first. The subject's willingness to resolve a fight with a deadly
> weapon may indicate he is a more serious risk than indicated by
> his guidelines. Release at this time would appear to diminish the value of
> the victim's life therefore release at this time is not recommended.

(Doc. 12-5, p. 2).

The hearing examiner recommended that petitioner be continued to a reconsideration hearing in February 2011. (Doc. 12-5, p. 5).

On February 21, 2008, the Parole Commission issued a Notice of Action in which it ordered: "Deny parole. Continue to a Three-Year Reconsideration Hearing in February 2011." (Doc. 12-5, p. 6). The Notice explained that the petitioner's Current Total Guideline Range was 165-177 months, and that he had been in confinement for a total of 160 months as of January 30, 2008 (Doc. 15-8, p. 1). The Notice advised the petitioner that a decision

> above the Current Total Guideline Range is warranted because you are
> a more serious risk than indicated by your Base Point Score in that you were
> walking with other individuals who were involved in an argument. When the
> victim reached into his bag, you used a weapon and shot the victim thinking
> the victim also had a weapon. You had not been involved in the argument, but
> were under the influence of drugs. Your willingness to use a weapon to solve
> an argument makes you a more serious threat to the community on release.

(Doc. 12-5, p. 6).

## II. CONTENTIONS OD THE PARTIES

The petitioner raises two grounds in his petition. First, he alleges that the BOP and the USPC erroneously computed his parole eligibility date and unlawfully denied him credit for time served in custody. Second, he alleges that the USPC violated the *Ex Post Facto* Clause of the United States Constitution when it denied him parole based on the United States Parole guidelines and regulations instead of the D.C. Board of Parole guidelines and regulations.

The respondent argues that the petitioner's claims against the BOP should be dismissed for failure to exhaust administrative remedies. In addition, the respondent contends that the BOP correctly applied D.C. sentence computation law to the petitioner's sentence. The respondent also argues that judicial review of the merits of the parole commission's decision is not appropriate. Finally, the respondent argues that the USPC did not violate the *Ex Post Facto* Clause when it applied the revised D.C. guidelines to the petitioner.

In his own Motion for Summary Judgment, filed as part of his response to the Roseboro Notice, the petitioner expands on his arguments raised in the petition. He has attached a number of exhibits including a May 1987 document outlining procedures for granting parole as set forth in District of Columbia Municipal Regulations.

## III. STANDARD OF REVIEW

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law,

4

that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

## B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve

6

scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

In this case, the petitioner clearly has not exhausted his administrative remedies. In addition, he does not argue that doing so would be futile. Instead, the petitioner merely ignores the issue. However, exhaustion of administrative remedies would clearly be appropriate in this instance given that the BOP is charged with the responsibility of sentence computation and has expertise in this area. See United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351 (1992) ( the Attorney General, through the BOP, has the responsibility for administering federal sentences); United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990) (the power to grant jail time credit lies exclusively with the Attorney General). Moreover, the record now before this Court is devoid of the necessary facts by which this Court needs to accurately assess the legitimacy of the petitioner's claim that the BOP never computed educational or industrial good time deductions for his non-mandatory minimum sentence. By requiring the petitioner to attempt resolution of his claim within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process.

**B. The USPC's Parole Determination**

On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir.1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). The Revitalization Act provided that the Parole Commission was to follow the parole law and regulations of the District of Columbia, but also granted the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code Ann. § 24-131(a)(1); Simmons v. Shearin, 295 F.Supp.2d 599, 602 (D.Md.2003).

Subsequently, the Commission established amendments and revisions to the 1987 guidelines of the D.C. Board of Parole, which had remained in effect until August 5, 1998. See 28 C.F.R. §2.70, et. seq. On July 21, 1998, the Commission's amended version of the parole rules and guidelines were published in the Federal Register at 63 FR 39172 and are found at 28 C.F.R. §2.70 et. seq. The Commission's decision-making guidelines are found at 28 C.F.R. §2.80.

As previously noted, the petitioner alleges that the Commission violated his rights under the *Ex Post Facto* Clause of the United States Constitution by using the federal regulations rather than the former D.C. guidelines. An *ex post facto* law is:

> any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available to law at the time when the act was committed.

Collins v. Youngblood, 497 U.S. 37, 43 (1990), *quoting*, Beasall v. Ohio, 269 U.S. 167, 169-70

8

(1925).

First, it is pertinent to note that a number of federal circuit courts have concluded that the federal parole guidelines are not "laws" for the purpose of the Ex Post Facto Clause. See Kelly v. Southerland, 967 F.2d 1531, 1532-33 (11th Cir. 1992); Sheary v. U.S. Parole Comm'n, 822 F.2d 556, 558 (5th Cir. 1987); Vermouth v. Corrothers, 827 F.2d 599, 604 (th Cir. 1987). But see U.S.A. ex rel. Forman v. McCall, 776 F.2d 1156, 1159 (3rd Cir. 1985) (holding that "if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes," but recognizing that "[t]his position has since been rejected by every other circuit that has addressed the issue").

Second, the parole statute under which the USPC has made its parole decision with respect to the petitioner is the same law that was in effect at the time he committed his offense. D.C. Code § 24-404, formerly § 24-204 provides as follows:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code § 24-404. In essence, the Revitalization Act simply transferred paroling authority from one agency to another. See Franklin v. District of Columbia, 163 F.3d at 625, 632 (C.A.D.C. 1998). However, it placed the USPC under a continuing obligation to follow DC parole law and rules and also transferred to the USPC the same authority, previously enjoyed by the Board to "amend or supplement" those rules. See Muhammad v. Mendez, 200 F.Supp.2d 466, 470 (M.D.Pa. 2002).

Furthermore, even if the parole guidelines could be considered laws for *ex post fact* purposes,

9

the petitioner has filed to demonstrate that the USPC's revised parole guidelines created a significant risk of increasing his punishment. There can be no argument that the USPC exceeded the guideline range when it denied him parole and continued him for a 36 month parole hearing. However, the regulation in effect when the petitioner committed his crime in 1994, provided as follows:

> The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

28 DCMR § 104.11. In nearly identical language, the Parole Commission adopted a regulation which permits departures from the guidelines:

> The Commission may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines. Unusual circumstances are case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole. In such cases, the Commission shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range.

28 C.F.R. § 2.80(n)(1). Therefore, the petitioner's claim that the Board would have given him more lenient treatment than that ordered by the USPC is merely speculative. See McKissick v. U.S. Parole Commission, 295 F. Supp. 2d 643, 649 (S.D.W.Va), afff'd 67 Fed Appx. 824 (4th Cir. 2003)(finding that it was impossible to assume that the Board would not have departed from the guidelines as did the Commission). Likewise, the petitioner's claim that he would have received more favorable treatment from the Board based upon participation in prison programs is without merit. "[C]ontrary to the petitioner's arguments, the D.C. guidelines did not require parole decisions to emphasize rehabilitation and to ignore the severity of the offense. See e.g.. 28 D.C.M.R § 204.18(a) and 204.18(d); Ellis v. District of Columbia, 84 F.3d 1413 (D.C. Cir. 1996)." Terry v Reilly, 2006 WL 1133888 *4 (N.D. W.Va., April 26, 2006).

Finally, it must be remembered that the petitioner was sentenced to a term of imprisonment of fifteen years to life for murder. Therefore, any period of incarceration exceeding the minimum sentence of fifteen years is not an increase in sentence because the petitioner ultimately faces a lifetime of incarceration. Therefore, in petitioner's case, the change in parole guidelines could not violate the *Ex Post Facto* clause, as there can be no increase in punishment beyond the possible life sentence that was imposed. Terry, supra.

## IV. RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc.11) be **GRANTED,** the petitioner's Motion for Summary Judgment (Doc. 15) be **DENIED**, and petitioner's §2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE** with respect to his claims regarding the denial of parole and be **DISMISSED WITHOUT PREJUDICE** with respect to his claims regarding his sentence calculation and the award of industrial and educational good time credits.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the

*pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: May 11, 2009

                                            /s/ James E. Seibert
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE